Bret A. Stone    SBN 190161   BStone@PaladinLaw.com
Kirk M. Tracy    SBN 288508   KTracy@PaladinLaw.com
Rachel M. Smith  SBN 339978   RSmith@PaladinLaw.com
PALADIN LAW GROUP® LLP
220 W. Gutierrez Street
Santa Barbara, CA  93101
Telephone:   (805) 898-9700
Facsimile:    (805) 852-2495

Counsel for 1716 Main Street, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 1716 MAIN STREET, LLC | Case No. 2:21-cv-09373-RGK-PLA |
| *Plaintiff*, | FIRST AMENDED COMPLAINT FOR: |
| *v.* | 1. Abatement of Imminent and Substantial Endangerment— RCRA § 7002(a)(1)(B) |
| MAIN STREET CLEANERS, a business entity of unknown status; PHILLIP HERNANDEZ, an individual and dba Main Street Cleaners; ESTATE OF SOL GURA, DECEASED, an individual; ESTATE OF ESTHER GURA, DECEASED, an individual; DENNIS A. GURA, an individual; ROBERT J. GURA, an individual; GURA FAMILY TRUST DATED FEBRUARY 13, 1989, by and through its co-trustees Dennis A. Gura and Robert J. Gura; KHANBABA Y. RASHTI, an individual; MAHINDOKHT KASHIZADEH, an individual; MICHAEL J. SARLO, an individual; and DOES 1 through 10, inclusive. | 2. Cost Recovery under CERCLA § 107(a)<br>3. Cost Recovery under the HSAA<br>4. Abatement of a Continuing Public Nuisance<br>5. Abatement of a Continuing Private Nuisance<br>6. Continuing Trespass<br>7. Contribution<br>8. Equitable Indemnity<br>9. Declaratory Relief<br><br>[DEMAND FOR JURY TRIAL] |
| *Defendants*. | |

Plaintiff 1716 Main Street, LLC ("Plaintiff") brings this action against Main Street Cleaners, a business entity of unknown status; Phillip Hernandez, an individual and dba Main Street Cleaners; Estate of Sol Gura, Deceased, an individual; Estate of



FIRST AMENDED COMPLAINT

Esther Gura, Deceased, an individual; Dennis A. Gura, an individual; Robert J. Gura, an individual; Gura Family Trust Dated February 13, 1989, by and through its co-trustees Dennis A. Gura and Robert J. Gura; Khanbaba Y. Rashti, an individual; Mahindokht Kashizadeh, an individual; Michael J. Sarlo, an individual; and does 1 through 10, inclusive (collectively, "Defendants"), and alleges upon knowledge as to its own acts, and upon information and belief as to the acts of all others, as follows:

**NATURE OF THE ACTION**

1.     Plaintiff files this action to address and resolve the continuing environmental problem created by Defendants' acts or omissions that caused and continue to cause damage to health, safety, and property of Plaintiff, surrounding properties, and the environment. Plaintiff also files this action in defense of claims against it in order to recover costs incurred and avoid or minimize their alleged liability associated with responding to orders by the California Regional Water Quality Control Board – Los Angeles Region (the "RWQCB") related to environmental contamination at and emanating from the former Main Street Cleaners at 1720 Main Street, Venice Beach, California (the "Property").

2.     The area of contamination for which Plaintiff seeks relief includes the Property and the vertical and horizontal extent of the contamination at or emanating from the Property, including the locations where contamination has come to be located or threatens to become located (collectively, the "Site").

3.     Since June 23, 2010, the Site has been the subject of an RWQCB order for further site investigation and soil remediation ("RWQCB Order"). Plaintiff has incurred costs responding to the contamination at the Site and the RWQCB Order.

4.     On December 19, 2012, the RWQCB issued a No Further Action Determination for soil only. However, the full extent of the contamination is unknown at this time. Based on the magnitude of the Chemicals of Concern (defined below) concentrations observed, the RWQCB has ordered additional investigations to evaluate the full extent of the contamination remaining in the environment at the

1    Site and treatments to remediate the contamination.

2                                        **PARTIES**

3                                        *Plaintiff*

4        5.      Plaintiff is the owner of the Property. Plaintiff took title to the Property

5    in 2003.

6                                   *Operator Defendants*

7        6.      Main Street Cleaners was located at the Property from approximately

8    1981 to 2000 and continuously operated a dry-cleaning business at the Property.

9    Main Street Cleaners is a business entity of unknown status.

10       7.      Phillip Hernandez is an individual who owned and operated Main Street

11   Cleaners from approximately 1981 to 2000. (Main Street Cleaners, Phillip

12   Hernandez, and Does 1 through 5 are collectively referred to as "**Operator**

13   **Defendants**".)

14                                  *Owner Defendants*

15       8.      Estate of Sol Gura, Deceased, is named as a defendant herein to the

16   extent of his estate's assets, whether distributed or undistributed, and pursuant to

17   California Probate Code §§ 550 through 555 to establish the decedent's liability for

18   which he was protected by liability insurance policies. Sol Gura was an owner of the

19   Property from approximately 1983 to 2003.

20       9.      Estate of Esther Gura, Deceased, is named as a defendant herein to the

21   extent of her estate's assets, whether distributed or undistributed, and pursuant to

22   California Probate Code §§ 550 through 555 to establish the decedent's liability for

23   which she was protected by liability insurance policies. Esther Gura was an owner of

24   the Property from approximately 1983 until her death in 2002.

25       10.     Dennis A. Gura is an individual who owned the Property from

26   approximately 1983 to 2002.

27       11.     Robert J. Gura is an individual who owned the Property from

28   approximately 1983 to 2002.

12. Gura Family Trust Dated February 13, 1989, by and through its co-trustees Dennis A. Gura and Robert J. Gura, owned the Property in 2003 until it sold the Property to Plaintiff later that year.

13. Khanbaba Y. Rashti is an individual who owned the Property for approximately eight (8) months in 1983.

14. Mahindokht Kashizadeh is an individual who owned the Property for approximately eight (8) months in 1983.

15. Michael J. Sarlo is an individual who owned the Property from approximately 1980 to 1983.

16. The true names and capacities, whether individual, corporate, associate, or otherwise, of Does 1 through 10 are unknown to Plaintiff at this time, and Plaintiff's claims are asserted against them using fictitious names pursuant to Code of Civil Procedure § 474. When the true names and capacities of said Doe defendants have been ascertained, Plaintiff will amend this Complaint accordingly. (Estate of Sol Gura, Deceased, Estate of Esther Gura, Deceased, Dennis A. Gura, Robert J. Gura, Gura Family Trust Dated February 13, 1989, by and through its co-trustees Dennis A. Gura and Robert J. Gura, Khanbaba Y. Rashti, Mahindokht Kashizadeh, Michael J. Sarlo, and and Does 6 through 10 are collectively referred to as "**Owner Defendants**".)

### JURISDICTION, VENUE, AND NOTICE

17. This Court has jurisdiction over the subject matter of Plaintiff's first causes of action pursuant to section § 7002(a) of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a), and second and ninth causes of action pursuant to sections 107 and 113(b) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607, 9613(b), 9613(g)(2), and each under 28 U.S.C. § 1331. In addition, this Court has jurisdiction over Plaintiff's ninth cause of action under the federal Declaratory Judgment Act, 28 U.S.C. § 2201, and 28 U.S.C. § 1331.

18.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the subject matter of Plaintiff's other causes of action because those claims are so related to the federal claims in this action that they form the same case and controversy under Article III of the U.S. Constitution.

19.     Venue is proper in this Court pursuant to CERCLA § 113(b) because the release and damage occurred in this district. Furthermore, venue is proper in this Court pursuant to Section 7002(a) of RCRA, 42 U.S.C. § 6972(a), and 28 U.S.C. § 1391(b) because the actual and threatened endangerment, injury, and damage at issue are taking place and have taken place in this district.

20.     Plaintiff provided notice of the actual and threatened endangerment, injury, and damage alleged herein by mailing notices of endangerment and of intent to file suit pursuant to RCRA § 7002(b)(2)(A), 42 U.S.C. § 6972(b)(2)(A), to the U.S. Environmental Protection Agency ("US-EPA"), the California EPA ("Cal-EPA"), the California Department of Toxic Substances Control ("DTSC"), and Defendants.

21.     Plaintiff waited at least 90 days after sending the notices of endangerment to each of the Defendants before filing the RCRA cause of action.

22.     Plaintiff has satisfied all jurisdictional prerequisites to filing this Complaint.

## GENERAL ALLEGATIONS

23.     The Property is located in a densely populated urban area of mixed commercial and residential use.

24.     The Site has been adversely impacted by the presence chlorinated hydrocarbons, including tetrachloroethylene (aka, tetrachloroethene, perchloroethylene and Perc) (collectively, "PCE"), and associated degradation products, including trichloroethylene (aka, trichloroethene, 1,1,2-trichloroethene, ethene, and trichloro) ("TCE"), cis-1,2-dichloroethene and trans-1,2-dichloroethene ("DCE"), and vinyl chloride (collectively the "Chemicals of Concern").

25.     The source of Chemicals of Concern in the environment at the Site is Main Street Cleaners' dry-cleaning business that operated at the Property from approximately 1981 to 2000. On information and belief, Main Street Cleaners was a fictitious business name for some or all of that period of time.

26.     PCE is an industrial solvent that has been used in significant quantities in the dry- cleaning industry since the 1940s.

27.     Common synonyms for PCE include perc, perchlor, carbon bichloride, carbon dichloride, ethylene tetrachloride, petrochlorothylene, perclene, perk, perchloroethene, 1,1,2,2- tetrachloroethylene, and tetrachloroethene.

28.     PCE degrades to TCE, which in turn degrades to DCE, which in turn degrades to vinyl chloride, which in turn degrades to ethene, and finally to carbon dioxide, water, and free chlorine.

29.     PCE and its breakdown products are manmade chemicals and are not naturally occurring in the environment.

30.     The International Agency for Research on Cancer has classified PCE and TCE as Group 2A carcinogens, which means that PCE and TCE are probable carcinogens to humans.

31.     As a toxic, long-lived, volatile, chlorinated hydrocarbon and likely carcinogen, PCE and many of its degradation products are closely regulated by the state of California and the federal government.

32.     Because of its mobility in groundwater, its toxicity to humans at low levels, and its density (which causes it to sink below the water table), PCE in the environment can be difficult and expensive to cleanup.

33.     The Chemicals of Concern are each a hazardous substance as that term is defined in federal law, 42 U.S.C. § 9601(14), and state law, Cal. Health & Safety Code § 25281(h), and when discarded are each a hazardous waste and solid waste as those terms are defined in federal law, 42 U.S.C. § 6903(5), (27), respectively.

34.     All groundwater within the state of California, including the

FIRST AMENDED COMPLAINT

groundwater in, at, and around the Site and all groundwater that has allegedly been adversely impacted by contamination at and emanating from the Site is "water of the state" pursuant to California Water Code § 13050. The groundwater at and migrating to or from the Site has been or is threatened with being adversely impacted by contamination at or emanating to or from the Site.

35.    Each Defendant caused or contributed to the past or present use, handling, storage, treatment, transportation, generation, release, or disposal of Chemicals of Concern in the environment in, at, and emanating from the Site, including soil, land, subsurface strata, air, vapor, groundwater, surface water, and the waters of the state of California, because each Defendant released or otherwise discarded Chemicals of Concern, or controlled and/or operated the Property or business from which Chemicals of Concern were released or otherwise discarded, and failed to prevent or abate the contamination caused by the Chemicals of Concern.

36.    At various times from at least 1981 to 2000, Defendants intentionally, negligently, suddenly, and accidentally caused or contributed to the presence of Chemicals of Concern in the environment, including soil, land, subsurface strata, air, vapor, groundwater, surface water, and the waters of the state of California, at the Site.

37.    Once the various discharges of Chemicals of Concern, whether intentional, sudden and accidental, or otherwise were released into the environment, these Chemicals of Concern continued to spread and migrate within the environment in, at, and from the Site, including soil, land, subsurface strata, air, vapor, groundwater, surface water, and the waters of the state of California.

38.    Operator Defendants owned or operated a dry-cleaning business and equipment at the time Chemicals of Concern were spilled at the Property as a result of equipment malfunctions. On information and belief, Owner Defendants knew of these spills.

39.    Operator Defendants owned or operated a dry-cleaning business and

FIRST AMENDED COMPLAINT

equipment at the time Chemicals of Concern were spilled, released, and discharged at the Site due to the willful, intentional, reckless, negligent, or improper use, handling, and/or disposal practices of the dry-cleaning operations. On information and belief, Owner Defendants knew of these spills, releases, and discharges to the environment and failed to abate the contamination.

40.     Operator Defendants owned or operated a dry-cleaning business and equipment at the time Chemicals of Concern were spilled, released, and discharged at the Site as a result of one or more boil overs of the cooker. On information and belief, Owner Defendants knew of these spills, releases, and discharges to the environment and failed to abate the contamination.

41.     Operator Defendants owned or operated a dry-cleaning business and equipment at the time Chemicals of Concern were spilled, released, and discharged at the Site as a result of lack of proper maintenance of the dry-cleaning equipment. On information and belief, Owner Defendants knew of these spills, releases, and discharges to the environment and failed to abate the contamination.

42.     Operator Defendants owned or operated a dry-cleaning business and equipment at the time Chemicals of Concern were spilled, released, and discharged at the Site as a result of one or more worn or failed gaskets. On information and belief, Owner Defendants knew of these spills, releases, and discharges to the environment and failed to abate the contamination.

43.     Operator Defendants owned or operated a dry-cleaning business and equipment at the time Chemicals of Concern were spilled, released, and discharged at the Site during the delivery of PCE. On information and belief, Owner Defendants knew of these spills, releases, and discharges to the environment and failed to abate the contamination.

44.     Operator Defendants owned or operated a dry-cleaning business and equipment at the time Chemicals of Concern were spilled, released, and discharged at the Site when spent filter materials were placed in the trash or dumpster or other

unmarked containers provided by Owner Defendants. On information and belief, Owner Defendants knew of these spills, releases, and discharges to the environment and failed to abate the contamination.

45. Operator Defendants owned or operated a dry-cleaning business and equipment at the time Chemicals of Concern were spilled, released, and discharged at the Site when separator water contaminated with Chemicals of Concern were emptied, released, and discharged into the sewer system, down a drain, or down a toilet owned and maintained by Owner Defendants. Owner Defendants knew of these spills, releases, and discharges and Owner Defendants owned and were responsible for maintenance of the sewer laterals under local law.

46. Operator Defendants owned or operated a dry-cleaning business and equipment at the time Chemicals of Concern were spilled, released, and discharged at the Site when separator water contaminated with Chemicals of Concern were emptied, released, and discharged outside the back door onto the ground. On information and belief, Owner Defendants knew of these spills, releases, and discharges to the environment and failed to abate the contamination.

47. Operator Defendants owned or operated a dry-cleaning business and equipment at the time Chemicals of Concern were spilled, released, and discharged at the Site when dry cleaning equipment was dismantled and removed from the Property. On information and belief, Owner Defendants knew of these spills, releases, and discharges to the environment and failed to abate the contamination.

48. Operator Defendants owned or operated a dry-cleaning business and equipment without a hazardous materials storage or generator permit, as required by applicable federal, state, or local laws.

49. Operator Defendants owned or operated a dry-cleaning business and equipment without manifesting and tracking Chemicals of Concern as required by applicable federal, state, or local laws.

50. Operator Defendants owned or operated a dry-cleaning business and

FIRST AMENDED COMPLAINT

equipment without a hazardous materials business plan or proper hazardous materials training, as required by applicable federal, state, or local laws.

51.     Plaintiff has demanded that Defendants defend, indemnify, and hold Plaintiff harmless, but none of the Defendants have provided a defense, indemnity, or held Plaintiff harmless.  Plaintiff is an innocent owner of the Property and has not caused or contributed to the contamination at the Site.

52.     As a result of and in response to Defendants' willful, intentional, negligent, sudden and accidental, and/or reckless releases of Chemicals of Concern at the Site, Plaintiff has incurred and will continue to incur response costs and/or remedial costs in order to investigate, mitigate, and remediate the contamination, including research and identification of potentially responsible parties, initial or preliminary investigation costs, initial or preliminary monitoring costs, mitigation costs, and RWQCB oversight costs.

### FIRST CAUSE OF ACTION
### (Abatement of Imminent and Substantial Endangerment – RCRA § 7002(a)(1)(B))
### (Against All Defendants)

53.     Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 52, inclusive, as though set forth in full herein.

54.     Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B), under which Plaintiff brings this action, is RCRA's citizen enforcement provision.

55.     Any person may bring a lawsuit under RCRA § 7002(a)(1)(B) when: (a) a "solid or hazardous waste" (b) "**may** present an imminent and substantial endangerment to health or the environment" and (c) the defendant falls within one of the categories of entities that Congress declared liable for taking abatement action or "such other action as [this Court determines] may be necessary." (Emphasis added.)

56.     The persons declared liable by Congress for abatement of potential endangerments under RCRA § 7002(a)(1)(B) are entities that contributed to "past or present handling, storage, treatment, transportation, or disposal" of the "hazardous



wastes" or "solid wastes" at issue.  Pursuant to the express terms of RCRA § 7002(a)(1)(B), these entities specifically include "any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility."

57.    Under RCRA § 1004(27), 42 U.S.C. § 6903(27), "solid waste" is "discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities."  The term, however, does not include "solid or dissolved material in domestic sewage, or solid or dissolved materials in irrigation return flows or industrial discharges which are point sources subject to permits under section [1342 of Title 33] . . . ."

58.    None of the discharges from Defendants is solid or dissolved material in domestic sewage, or solid or dissolved materials in irrigation return flows, or industrial discharges which are point sources subject to permits under Section 1342 of Title 33.

59.    Under Section 1004(5) of RCRA, 42 U.S.C. § 6903(5), "hazardous waste" is "a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may . . . pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported or disposed of, or otherwise managed."

60.    Under Section 1004(3) of RCRA, 42 U.S.C. § 6903(3), "disposal" means "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters."

61.    Pursuant to authority under Section 3001 of RCRA, 42 U.S.C. § 6921, the Administrator of the U.S. E.P.A. promulgated regulations at 40 C.F.R., Part 261 listing or identifying certain hazardous wastes that the Administrator elects to subject

to the strict regulatory program established in Subtitle III of RCRA, 42 U.S.C. §§ 6921-6931. Pursuant to RCRA § 7006(a)(1), 42 U.S.C. § 6976(a)(1), any RCRA hazardous waste finally so "listed or identified" by the Administrator following formal, "notice and comment" rule-making as being subject to the hazardous waste regulatory program set forth in Subtitle III of RCRA, has been finally and conclusively determined for all purposes of any RCRA enforcement action, including the instant one, to be a "hazardous waste" as defined by RCRA § 1004(5). However, for purposes of RCRA § 7002(a)(1)(B) citizen suits, substances also qualify as "hazardous wastes" and "solid wastes" when the above statutory definitions (i.e., those set forth in RCRA §§ 1004(5) and (27)) are met. 40 C.F.R. § 261.1(b)(2).

62.     Plaintiff and each Defendant are each a "person" within the meaning of RCRA § 1004(15), 42 U.S.C. § 6903(15).

63.     The Chemicals of Concern released into the environment by Operator Defendants are solid wastes because they are discarded material resulting from commercial operations.

64.     The Chemicals of Concern released into the environment by Operator Defendants are "hazardous wastes" because of their concentrations, or physical or chemical characteristics, they pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, disposed of, or otherwise managed.

65.     Tetrachloroethylene (PCE) is a listed hazardous waste under 40 CFR Section 261.33 with hazardous waste no. U210 and chemical abstract no. 127-18-4.

66.     Trichloroethylene (TCE) is a listed hazardous waste under 40 CFR Section 261.33 with hazardous waste no. U228 and chemical abstract no. 79-01-6.

67.     Each of the Defendants caused or contributed to the past or present handling, storage, treatment, transportation, or disposal of "solid wastes," "hazardous wastes," "wastes," and "hazardous substances" in the environment in, at, and around the Site because each Defendant released or otherwise discarded Chemicals of

Concern or controlled the property from which Chemicals of Concern were released or otherwise discarded, but failed to prevent or abate this "solid waste," "hazardous waste," "waste," and "hazardous substance" contamination.

68.     Owner Defendants, or their agents, knew of spills, releases, and discharges of Chemicals of Concern to the sewer system because they knew dry-cleaning equipment was plumbed directly to the sewer and separator water contaminated with Chemicals of Concern was emptied, released, and discharged into the sewer system, down a drain, or down a toilet.  Owner Defendants owned and were responsible for maintenance of the sewer laterals under local law.

69.     On information and belief, Owner Defendants knew of the spills, releases, and discharges of Chemicals of Concern into the environment as a result of: equipment malfunctions; willful, intentional, reckless, negligent, or improper use, handling, and/or disposal practices of the dry-cleaning operations; boil overs of the cooker; lack of proper maintenance of the dry-cleaning equipment; worn or failed gaskets; spills during delivery of PCE; spent filter materials placed in the trash or dumpster or other unmarked containers; separator water contaminated with Chemicals of Concern were emptied, released, and discharged outside the back door onto the ground and into the environment; and when dry cleaning equipment was dismantled and removed from the Property.

70.     Owner Defendants, or their agents, had knowledge of the various spills, releases, and discharges of Chemicals of Concern into the environment by observing such spills, releases, and discharges during inspections of the properties that Owner Defendants owned and for which they were landlords.

71.     During such inspections, Owner Defendants, or their agents, saw at the Property releases of PCE through the various mechanisms described herein, including by seeing staining on the floors inside and on the ground behind the dry-cleaning businesses, PCE spills to the floors inside and on the ground behind the dry-cleaning businesses, PCE-laden separator water from dry-cleaning machines

disposed down the drain or poured on the ground behind the dry-cleaning businesses, and spills during delivery of PCE.

72.     Owner Defendants maintained the environmental conditions by failing to abate the contamination.

73.     The presence of Chemicals of Concern at and around the Site presents or may present an imminent and substantial endangerment to human health or the environment. The RWQCB has an active case on the site.

74.     Defendants' liability for abatement, Plaintiff's attorneys' fees, and for such other relief as the Court may determine appropriate and necessary under RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), is strict, joint, and several.

75.     Plaintiff gave the U.S. Attorney General and the EPA Administrator notice of the commencement of this action, as required by RCRA § 7002(b)(2)(F), 42 U.S.C. § 6972(b)(2)(F).

76.     Plaintiff is entitled to injunctive relief under RCRA § 7002(a), 42 U.S.C. § 6972(a), restraining Defendants and requiring each of them, jointly and severally, to take such action, including a complete, timely, and appropriate investigation and abatement of all actual and potential endangerments arising from the released solid wastes and hazardous wastes at and emanating to or from the Site.

**SECOND CAUSE OF ACTION**
**(Cost Recovery – CERCLA § 107(a))**
**(Against All Defendants)**

77.     Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 76, inclusive, as though set forth in full herein.

78.     Operator Defendants used, processed, produced, stored, treated, and/or generated Chemicals of Concern in the course of their dry-cleaning operations at the Property, including during the time Owner Defendants owned the Property, respectively.

79.     Defendants caused or contributed to the spilling, leaking, disposal, and release of Chemicals of Concern in the course of their dry-cleaning operations at the

Property, thereby creating a condition of hazardous substance contamination at the Site, including during the time Owner Defendants owned the Property, respectively.

80. As a result of and in response to Defendants' releases of Chemicals of Concern, Plaintiff has incurred responses costs and will incur costs for initial monitoring and investigation, searching for potentially responsible parties, mitigation, and remediation of the soil, soil vapor, groundwater, and indoor air at the Site.

81. Defendants transported or arranged for transport of Chemicals of Concern which they owned or possessed to the Property, and stored, treated, handled, and disposed of Chemicals of Concern at the Site, or otherwise owned or operated the Property during the time that Chemicals of Concern were disposed of at the Property and the Site. Defendants are thereby jointly and severally liable under section 107(a) of CERCLA § 107(a), 42 U.S.C. § 9607(a).

82. The Property and Site are each a "facility," as that term is defined in CERCLA § 101(9), 42 U.S.C. § 9601(9).

83. A "release" or threatened release of Chemicals of Concern and other "hazardous substances," as those terms are defined in CERCLA §§ 101(22), (14), 42 U.S.C. §§ 9601(22), (14), has occurred at the Site.

84. The term "respond" or "response" means remove, removal, remedy, and remedial action; all such terms (including the terms "removal" and "remedial action") include enforcement activities related thereto. CERCLA §§ 101(25), 42 U.S.C. §§ 9601(25).

> a. The terms "remove" or "removal" means the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the

FIRST AMENDED COMPLAINT

environment, which may otherwise result from a release or threat of release. The term includes, in addition, without being limited to, security fencing or other measures to limit access, provision of alternative water supplies, temporary evacuation and housing of threatened individuals not otherwise provided for, action taken under section 9604(b) of this title, and any emergency assistance which may be provided under the Disaster Relief and Emergency Assistance Act (42 U.S.C. § 5121 *et seq.*).  CERCLA §§ 101(23), 42 U.S.C. §§ 9601(23).

b.  The terms "remedy" or "remedial action" means those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment. The term includes, but is not limited to, such actions at the location of the release as storage, confinement, perimeter protection using dikes, trenches, or ditches, clay cover, neutralization, cleanup of released hazardous substances and associated contaminated materials, recycling or reuse, diversion, destruction, segregation of reactive wastes, dredging or excavations, repair or replacement of leaking containers, collection of leachate and runoff, onsite treatment or incineration, provision of alternative water supplies, and any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment. The term includes the costs of permanent relocation of residents and businesses and community facilities where the President determines that, alone or in combination with other measures, such relocation is more cost-effective than and environmentally preferable to the transportation, storage, treatment, destruction, or secure disposition offsite of hazardous substances, or may otherwise be necessary to protect the public health or welfare; the term includes offsite transport and offsite storage, treatment, destruction, or secure disposition of hazardous substances and associated contaminated materials. CERCLA §§ 101(24), 42 U.S.C. §§ 9601(24).

85.    Response costs include all efforts and activities related to remove, removal, remedy, and remedial action; all such terms (including the terms "removal" and "remedial action") include enforcement activities related thereto.



FIRST AMENDED COMPLAINT

86.     Response costs include work related to the identification of potential responsible parties that have caused or contributed to the disposal, release, or threatened release of hazardous substances at the Site.

87.     Response costs include work related to initial preliminary investigation of hazardous substances at the Site.

88.     Response costs include lead agency oversight costs that relate to the investigation, mitigation, and removal of hazardous substances at the Site.

89.     Plaintiff has incurred, and will continue to incur, response costs in response to the Chemicals of Concern disposed of, released, or threatened to be released (including the continued migration of the Chemicals of Concern within the environment) of hazardous substances at the Site.

90.     Plaintiff did not cause or contribute to, and denies liability for costs incurred as the result of, the alleged release or threatened release of Chemicals of Concern at the Site. However, in the interest of an expeditious cleanup and acting in good faith, Plaintiff has incurred and continues to incur necessary response costs to investigate, remove, mitigate, and remediate the environmental contamination at the Site consistent with the National Contingency Plan.

91.     Plaintiff gave notice of this action to the Attorney General of the United States and the Administrator of the United States Environmental Protection Agency, as required by CERCLA § 113(*l*), 42 U.S.C. § 9613(*l*).

92.     Defendants are strictly liable to Plaintiff for the costs referred to above and for interest on those costs pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a).

**THIRD CAUSE OF ACTION**
**(Cost Recovery Under HSAA)**
**(Against All Defendants)**

93.     Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 92, inclusive, as though set forth in full herein.

94.     The Carpenter-Presley-Tanner Hazardous Substance Account Act, California Health & Safety Code § 25300 et seq. ("HSAA"), was enacted to

encourage the expedient cleanup of "hazardous substances" that have been released into the environment. In furthering this goal, the California Legislature included the statutory right of indemnity and contribution for those parties who clean up contaminated properties from those parties who are responsible for the contamination.

95.    Health & Safety Code § 25363(d) provides that "[a] person who has incurred response or corrective costs in accordance with [HSAA] or the federal [CERCLA, 42 U.S.C. § 9601 et seq.] may seek contribution or indemnity from any person who is liable pursuant to [HSAA]."

96.    A "liable person" is defined in section 25323.5(a)(1) of HSAA as "those persons described in section 107(a) of [CERCLA] (42 U.S.C. Sec. 9607(a))."

97.    "Those persons described in section 107(a)" of CERCLA include the owner and operator of a facility, any person who at the time of disposal of any hazardous substance owned or operated any facility at which hazardous substances were disposed, and any person who arranged for disposal or treatment of hazardous substances for transport to a disposal facility. 42 U.S.C. § 9607(a).

98.    A "facility" is defined as "(A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel. 42 U.S.C. § 9601(9).

99.    Plaintiff is a "person" within the meaning of Health & Safety Code § 25319.

100.    Defendant Main Street Cleaners is a "liable person" within the meaning of Health & Safety Code § 25323.5(a)(1) and 42 U.S.C. § 9607(a).

101.    Defendant Phillip Hernandez is a "liable person" within the meaning of

Health & Safety Code § 25323.5(a)(1) and 42 U.S.C. § 9607(a).

102.   Estate of Sol Gura, Deceased, is a "liable person" within the meaning of Health & Safety Code § 25323.5(a)(1) and 42 U.S.C. § 9607(a).

103.   Estate of Esther Gura, Deceased is a "liable person" within the meaning of Health & Safety Code § 25323.5(a)(1) and 42 U.S.C. § 9607(a).

104.   Defendant Dennis A. Gura is a "liable person" within the meaning of Health & Safety Code § 25323.5(a)(1) and 42 U.S.C. § 9607(a).

105.   Defendant Robert J. Gura is a "liable person" within the meaning of Health & Safety Code § 25323.5(a)(1) and 42 U.S.C. § 9607(a).

106.   Defendant Gura Family Trust dates February 13, 1989 by and through its co-trustees Dennis A. Gura and Robert J. Gura is a "liable person" within the meaning of Health & Safety Code § 25323.5(a)(1) and 42 U.S.C. § 9607(a).

107.   Defendant Khanbaba Y. Rashti is a "liable person" within the meaning of Health & Safety Code § 25323.5(a)(1) and 42 U.S.C. § 9607(a).

108.   Defendant Mahinfokht Kashizadeh is a "liable person" within the meaning of Health & Safety Code § 25323.5(a)(1) and 42 U.S.C. § 9607(a).

109.   Defendant Michael J. Sarlo is a "liable person" within the meaning of Health & Safety Code § 25323.5(a)(1) and 42 U.S.C. § 9607(a).

110.   There have been releases or threatened releases of hazardous substances into the environment at the Site, including at and from equipment at the Site, including during the time Owner Defendants owned the Property, respectively.

111.   As a direct and proximate result of Defendants' actions that caused or contributed to releases of hazardous substances at the Site, Plaintiff has incurred and will continue to incur costs for monitoring and investigation, and removal or remedial actions taken in accordance with Chapter 6.5 commencing with Health & Safety Code § 25100 and/or CERCLA, and the RWQCB Order. These include, but are not limited to, costs incurred for identification of potentially responsible parties, investigation, testing, site assessment, monitoring, mitigation, removal, and

remediation of the contamination.

112.   Plaintiff gave the Department of Toxic Substances Control ("DTSC") notice of the commencement of this action, as required by section 25363(d) of the Health & Safety Code.

113.   Accordingly, as a direct and proximate result of the actions and omissions of Defendants, as alleged herein, and under strict liability imposed by the HSAA, Plaintiff is entitled to indemnity and contribution from Defendants for the past and future costs of such removal or remedial action, including any work or activities related to such removal or remedial action such as investigation, mitigation, or cleanup and abatement work at the Site.

**FOURTH CAUSE OF ACTION**
**(Abatement of a Continuing Public Nuisance)**
**(Against All Defendants)**

114.   Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 113, inclusive, as though set forth in full herein.

115.   Civil Code § 3479 defines a "nuisance," in relevant part, as "[a]nything which is injurious to health, . . . or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal or basin."

116.   Section 3480 of the Civil Code defines a "public nuisance" as: "one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."

117.   Defendants caused or contributed to the past or present handling, storage, treatment, transportation, or disposal of Chemicals of Concern in the environment in, at, and emanating from the Site, because each Defendant released, discharged, or otherwise discarded Chemicals of Concern during their dry-cleaning operations or controlled the Property from which Chemicals of Concern were

released or otherwise discarded, but failed to prevent or abate such contamination.

118.   Defendants' acts and omissions in causing and contributing to releases of Chemicals of Concern in, at and emanating from the Site, as well as the Defendants' failure to abate these conditions at or emanating from the Site, created a condition that is injurious to health and is indecent or offensive to the senses.

119.   The public nuisance condition and related endangerments to health and the environment arising from released Chemicals of Concern in, at, and emanating from the Site affects the entire surrounding community because it interferes with the free use and enjoyment of publicly- and privately-owned property and natural resources, including groundwater, as well as creating a public health risk from the vapors intruding peoples' homes and places of work.

120.   Defendants have caused, created, maintained, contributed to, and neglected to abate a "public nuisance," as defined in Civil Code sections 3479 and 3480, namely the actual and potential endangerments to health and the environment created by the Chemicals of Concern contamination.

121.   The release or disposal of Chemicals of Concern, as alleged herein, constitutes a nuisance as the release or disposal is a violation of California Water Code sections 13050(m), 13350, and 13387, California Health and Safety Code sections 5411, 5411.5, and 117555, California Fish and Game Code section 5650, Civil Code sections 3479-3480, California Code of Civil Procedure section 731, California Penal Code sections 372 and 374.8, Los Angeles County Code, including sections 1.23.040, 1.23.050, 11.02.300, 11.38.700, and 20.36.010, and chapter 12.52, and City of Los Angeles Municipal Code, including Sections 54.02–54.04, 58.02, 64.30, and 190.02, the purpose of which are to set a standard of care or conduct to protect the public and the environment from the type of improper activities engaged in by Defendants. Therefore, such improper activities and violations constitute a nuisance *per se*.

122.   Plaintiff is among the class of people and entities these laws were

FIRST AMENDED COMPLAINT

intended to protect.

123. Defendants have failed to comply with federal, state, local, and common law.

124. Plaintiff has suffered special injury and damages as a direct and proximate result of the alleged continuing public nuisance and/or public nuisance *per se* created by Defendants' ownership and operation of the Property or dry-cleaning business, because Plaintiff has been required to investigate and expend money to address the contamination issues at and emanating from the Property, would not be able to sell the Property, if at all, without significant discount, and would not be able to refinance the Property, if at all, without higher interest charges, and has been required to conduct additional investigation, mitigation, and remediation of the soil, soil vapor, groundwater, and indoor air at the Property.

125. The continuing nuisance complained of is abatable and Plaintiff has demanded that Defendants abate the continuing nuisance complained of, and hereby reiterates that demand.

126. Plaintiff did not consent to Defendants' conduct in causing and contributing to the public nuisance.

127. Defendants are strictly, and jointly and severally liable for abatement of the public nuisance.

128. Plaintiff is entitled to relief restraining Defendants and requiring each of them, jointly and severally, promptly and competently, to take such action as may be necessary to abate the public nuisance and for reimbursing Plaintiff for all response costs incurred and to be incurred at the Site.

**FIFTH CAUSE OF ACTION**
**(Abatement of a Continuing Private Nuisance)**
**(Against All Defendants)**

129. Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 128, inclusive, as though set forth in full herein.

130. Defendants caused or contributed to the past or present handling,

storage, treatment, transportation, or disposal of Chemicals of Concern in the environment in, at, and emanating from the Site, including the waters of the State of California, because each Defendant released or otherwise discarded those Chemicals of Concern during their dry-cleaning operations or controlled the equipment or Property from which those contaminants were released or otherwise discarded, but failed to prevent or abate such contamination.

131.   Defendants' acts or omissions contributed to or caused the discharge and release of Chemicals of Concern in, at, and emanating from the Site, which have interfered with Plaintiff's free use and enjoyment of its property.

132.   The release or disposal of Chemicals of Concern, as alleged herein, constitutes a nuisance as the release or disposal is a violation of California Water Code sections 13050(m), 13350, and 13387, California Health and Safety Code sections 5411, 5411.5, and 117555, California Fish and Game Code section 5650, Civil Code sections 3479-3480, California Code of Civil Procedure section 731, California Penal Code sections 372 and 374.8, Los Angeles County Code, including sections 1.23.040, 1.23.050, 11.02.300, 11.38.700, and 20.36.010, and chapter 12.52, and City of Los Angeles Municipal Code, including Sections 54.02–54.04, 58.02, 64.30, and 190.02, the purpose of which are to set a standard of care or conduct to protect the public and the environment from the type of improper activities engaged in by Defendants. Therefore, such improper activities and violations constitute a nuisance *per se*.

133.   Defendants have failed to comply with federal, state, local, and common law.

134.   The continuing nuisance complained of is abatable and Plaintiff has demanded that Defendants abate the continuing nuisance complained of, and hereby reiterates that demand.

135.   Defendants are strictly and jointly and severally liable for abatement of the private nuisance.



136.   As a direct and proximate result of the acts, omissions, and conduct of Defendants, Plaintiff has suffered and continues to suffer damages as alleged herein. The above-described acts, omissions, and conduct of Defendants are and have been without the consent, knowledge, against the will, and in violation of the rights of Plaintiff.

137.   Plaintiff is entitled to injunctive relief restraining Defendants and requiring each of them, jointly and severally, promptly and competently, to take such action as may be necessary to abate the alleged continuing private nuisance and for reimbursing Plaintiff for all past and future response costs and other damages.

**SIXTH CAUSE OF ACTION**
**(Continuing Trespass)**
**(Against Operator Defendants)**

138.   Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 137, inclusive, as though set forth in full herein.

139.   Operator Defendants, without the consent or knowledge of Plaintiff, released Chemicals of Concern and knew or should have known that any such release would contaminate the soil, soil vapor, groundwater, and indoor air at the Site; and that unless the release was immediately contained and cleaned up, it would spread and travel through the soil and groundwater into the soil and groundwater of adjacent properties and buildings.

140.   Unless Operator Defendants are ordered immediately to clean up the alleged contamination of the soil, soil vapor, groundwater, and indoor air, it will be necessary for Plaintiff to commence many successive actions against Operator Defendants to secure compensation for the damages sustained, thus requiring a multiplicity of suits.

141.   Plaintiff has no adequate remedy at law for the injuries suffered by reason of the acts, omissions, and conduct of Operator Defendants and by reason of the trespass committed by them, and this Court should grant injunctive relief to compel Operator Defendants immediately to investigate, mitigate, and clean up the

alleged contamination of the soil, soil vapor, groundwater, and indoor air at, beneath, and around the Site.

142.   As a direct and proximate result of the acts, omissions, and conduct of Operator Defendants and of the continuing trespass caused thereby, Plaintiff has suffered and continues to suffer damages as alleged herein, including other consequential, incidental, and general damages to be proven at trial.

**SEVENTH CAUSE OF ACTION**
**(Contribution)**
**(Against All Defendants)**

143.   Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 142, inclusive, as though set forth in full herein.

144.   Section 1432 of the Civil Code provides in pertinent part: "a party to a joint, or joint and several obligation, who satisfies more than its share of the claim against all, may require a proportionate contribution from all the parties joined with him."

145.   As a direct and proximate result of Defendants' releases of hazardous substances into the environment, as alleged above, Plaintiff has and will continue to incur investigation, mitigation, monitoring, and cleanup fees and costs arising from the contamination at the Site.

146.   Plaintiff has and will incur more than its fair share of response costs for the hazardous substances at the Site.

147.   As a direct and proximate result of the acts, omissions, and conduct of Defendants, as herein alleged, Plaintiff is entitled to contribution from Defendants for any and all response costs Plaintiff has incurred and will continue to incur in connection with the contamination.

**EIGHTH CAUSE OF ACTION**
**(Equitable Indemnity)**
**(Against All Defendants)**

148.   Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 147, inclusive, as though set forth in full herein.



149.   The liability, if any, that Plaintiff may have to any person or entity, including, without limitation, any Defendants, any government or regulatory agency, under any law, regulation, or common law principle, relating to the contamination at the Site, is the result, in whole or in part, of the acts or omissions of Defendants.

150.   As between Plaintiff and Defendants, Defendants are solely responsible for all costs and expenses to investigate, mitigate, and clean up the contamination at and around the Site.

151.   As between Plaintiff and Defendants, Defendants are responsible for any legal or administrative actions that have been brought, or may be brought in the future, by any public or private persons concerning or related to the presence of the contaminants at and around the Site.

152.   In the event that Plaintiff is adjudged liable for any or all relief requested in any judicial or administrative action, arising out of or related to the presence of contaminants at and emanating from the Site, brought against Plaintiff by any persons or entities, public or private, such liability is purely secondary, imputed, or technical. Primary and actual liability attaches to Defendants and is a direct and proximate result of the acts, omissions, and conduct of Defendants.

153.   As a direct and proximate result of the acts, omissions, and conduct of Defendants, as herein alleged, Defendants are bound and obligated to indemnify and hold harmless Plaintiff from and against all costs, arising out of, or relating to the alleged contamination at and emanating from the Property, and any other costs they have incurred or will incur in the future.

**NINTH CAUSE OF ACTION**
**(Declaratory Relief – CERCLA § 113(g) and Cal. Code Civ. Proc. § 1060)**
**(Against All Defendants)**

154.   Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 153, inclusive, as though set forth in full herein.

155.   An actual dispute and controversy has arisen and now exists among the parties to this action concerning their respective rights and duties in that Plaintiff

contends, and Defendants deny, that Defendants are responsible for the contamination at the Site and are obligated to contribute to the costs of the investigation, mitigation, and cleanup.

156.   Because the extent and magnitude of the contamination at the Site are not fully known at this time, and the investigatory and remedial works are ongoing, Plaintiff will incur necessary response costs, including but not limited to investigatory, remedial, mitigation, and removal expenses, and attorneys' fees in the future.

157.   Plaintiff desires a judicial determination of its rights and duties and a declaration that Defendants are liable to Plaintiff for all response costs incurred or to be incurred by Plaintiff at the Site as a result of releases of Chemicals of Concern by Defendants and that Defendants are liable for the cleanup of the alleged contamination at the Site.

158.   Under state and federal law, including the Declaratory Judgment Act, 28 U.S.C. § 2201, CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2), and California Code of Civil Procedure, section 1060, Plaintiff is entitled to a judicial determination of the parties' rights and duties with respect to such dispute and controversy for this and any subsequent action or actions, including a declaration that Defendants are liable to Plaintiff for all harm suffered and costs incurred and to be incurred by Plaintiff as a result of the contamination at the Site, and that Defendants are liable for, and must timely perform, the monitoring, investigation, mitigation, and cleanup of the contamination at the Site and must timely obtain regulatory closure of the Site.

159.   A judicial declaration is necessary and appropriate under the present circumstances in order that Plaintiff may ascertain its rights and duties.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered in its favor for the following:

1.      For a preliminary and permanent injunction requiring Defendants to



undertake at their sole cost and consistent with the National Oil and Hazardous Substances Pollution Contingency Plan (the "NCP") at 40 C.F.R. Part 300, all actions necessary to investigate, mitigate, and abate the nuisance conditions and endangerments to health or the environment that may be presented by Defendants' use and disposal of "hazardous substances" as alleged above.

2.     For an order requiring Defendants to undertake at their sole cost all actions necessary to investigate, mitigate, and remediate the alleged contamination;

3.     For a declaration under CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2), that defendants are liable to Plaintiff for all past, present, and future necessary costs of response consistent with the national contingency plan;

4.     For a declaration that Defendants are liable under HSAA § 25363(d) and are liable to Plaintiff in contribution and/or indemnity under HSAA § 25363(d) for all past, present, and future response costs and other costs which may be incurred by Plaintiff at the Site;

5.     For declaratory relief on all causes of action;

6.     For damages from Defendants to compensate Plaintiff for the costs it has incurred and will incur in monitoring and investigation, response, removal, mitigation, or remedial efforts, in excess of $900,000.00, the exact amount of which will be ascertained according to proof at trial;

7.     For compensatory and consequential damages in excess of $900,000.00;

8.     For an award to Plaintiff for its costs of litigation, including attorneys' fees and expert witness fees pursuant to 42 U.S.C. § 6972(e), Code Civ. Proc. §§ 1021.5, 1021.6;

9.     For prejudgment and post-judgment interest;

10.    For all costs of suit herein;

11.    For such other and further relief as this Court deems just and proper.

/ / /

/ / /

1  JURY TRIAL DEMAND

2  Plaintiff hereby demands trial by jury of any and all issues so triable.

3  DATED: March 16, 2022        PALADIN LAW GROUP® LLP

4                              By: _/s/ Kirk M. Tracy_____

5                                  Bret A. Stone
                                    Kirk M. Tracy
6                                  Counsel for 1716 Main Street, LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



FIRST AMENDED COMPLAINT